UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

2005 DEC 20  P 4: 09

| | |
|---|---|
| RONDA AURAND<br>Plaintiff, | :<br>:<br>: U.S. DISTRICT COURT |
| v. | : CIVIL ACTION NO.<br>: 3:05-cv-1053 (JCH) |
| CONTEMPORARY MARKETING,<br>INC.,<br>Defendant. | :<br>:<br>: DECEMBER 20, 2005 |

**RULING RE DEFENDANT'S MOTIONS TO DISMISS AND TRANSFER VENUE
[DKT. NO. 8]**

The plaintiff, Ronda Aurand, brings this action against the defendant, Contemporary Marketing, Inc. ("CMI"), asserting causes of action under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and under state law for damages allegedly arising out of the breach of an employment agreement. CMI properly removed this action to this court from Connecticut Superior Court pursuant to 28 U.S.C. § 1441(c). CMI now moves under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) to dismiss this action for lack of personal jurisdiction and improper venue, and moves, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404. For the following reasons, CMI's motion to dismiss for lack of jurisdiction is GRANTED.

Aurand has also moved for leave to amend her complaint [Dkt. No. 19]. Aurand's motion is hereby GRANTED. The amended complaint [Dkt. No. 19-2] is considered in connection with CMI's motion.

## I. FACTUAL BACKGROUND[1]

At the time of the filing of this action, Aurand was a resident of Marlborough, Connecticut.[2] CMI is an Illinois corporation engaged in the business of marketing and sales. Its clients are manufacturers of health and pharmaceutical products throughout the country. CMI solicits manufacturers to arrange the distribution of their products through retail stores, such as grocery and convenience stores. In other words, CMI brokers relationships between manufacturers and retailers for the sale of the manufacturers' products in the retailers' stores. In return, CMI receives a commission, based on the volume and revenue from the sale of the placed products, from the manufacturers.

CMI holds itself out as having a national presence and the ability to place products in stores nationwide, including in Connecticut. According to Aurand, the retailers with which CMI's manufacturer clients did business have over 500 stores and distribution centers in Connecticut, and, as a result, CMI generated a significant amount of income from commerce in Connecticut. According to Aurand, CMI has at least one manufacturing client, Bausch & Lomb, that is located in Connecticut. In addition, CMI has employed or contracted with independent sales and marketing brokers to assist in its business. These brokers are directly managed by CMI, and they have solicited

---

[1] For purposes of this motion to dismiss, the court takes the facts alleged in the plaintiff's complaint, affidavit, and exhibits as true and draws all inferences in plaintiff's favor. See Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001); Credit Lyonnais Secs. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999).

[2] CMI claims in its pleadings, and Aurand concedes in her pleadings, that she currently lives in Alabama, not Connecticut. Def's Supp. Memo. in Sup. Of Def's Mot. to Dismiss, p. 1 [Dkt. No. 14]; Pl's Memo. of Law in Opp., p. 14 n.1 [Dkt. No. 18].

business in Connecticut.[3]

Aurand entered into an employment agreement with CMI in August 2000 to serve as a vice president of CMI. Aurand interviewed and was hired for her position over the phone in Pittsburgh, Pennsylvania, where Aurand resided. Aurand relocated to Illinois, where CMI is headquartered. Her duties as vice president included brokering agreements between manufacturers and retailers, including some retailers that did business in Connecticut, and supervising CMI's operations and employees in and outside of Illinois. In carrying out her duties, Aurand spent approximately 25% of her work time traveling throughout the United States. In 2002, Aurand entered into a revised employment contract that designated her as CMI's president.

Aurand does not recall making a sales or marketing presentation in Connecticut. She did, however, conduct business on behalf of CMI with CVS/Pharmacy, which is headquartered in Rhode Island, and which has a substantial number of stores in

---

[3] In her complaint, Aurand pleads that CMI

> distributes goods for use and consumption in the State of Connecticut . . .; does substantial business in the state of Connecticut; . . . generates substantial revenue and a substantial percentage of its total revenue from Connecticut commerce; and . . . exuded and continues to exude substantial control over the Connecticut pharmaceutical and health products distribution market and the price of goods in that market.

Am. Compl., ¶ 4 [Dkt. No. 19-3]. The court reads Aurand's pleadings and affidavit materials together, and understands these general pleadings to refer to the more specific facts described in Aurand's affidavit. In other words, the "substantial business" referred to in Aurand's complaint is CMI's marketing business as described in Aurand's affidavit, and not some other business that Aurand has not brought to the court's attention. See Melnick v. Adelson-Melnick, 346 F.Supp.2d 499, 502 n.17 (S.D.N.Y. 2004)(noting that, in responding to a Rule 12(b)(2) motion, the allegations comprising a plaintiff's prima facie case must be factually supported as a Rule 12(b)(2) motion is "inherently a matter requiring resolution of factual issues outside the pleadings.").

Connecticut.

In September 2003, Aurand's husband accepted a job in Connecticut, and Aurand made arrangements with CMI to work out of her new Connecticut home following her relocation. While Aurand resided in Connecticut, CMI allegedly breached Aurand's employment agreement by failing to pay Aurand several commission payments. CMI did make several commission payments to Aurand when she resided in Connecticut. Aurand resigned her position as CMI's president in December 2003. Aurand has not plead that she actually performed work for CMI in Connecticut.

Aurand filed suit against CMI in Hartford Superior Court in June 2005, and CMI promptly removed the action to this court in July 2005. CMI now moves to dismiss this action for lack of personal jurisdiction and improper venue, and moves, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404, arguing, inter alia, that CMI lacks sufficient contacts with Connecticut for the assertion of jurisdiction over it under Connecticut's long arm statute, Conn. Gen. Stat. § 33-929, and under the Fourteenth Amendment of the United States Constitution. Aurand argues that CMI's contacts with Connecticut through its marketing business, and the employment agreement between CMI and Aurand, provide a basis for personal jurisdiction over CMI.

## II.   LEGAL STANDARD

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Met. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). "Where a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses

personal jurisdiction over the defendant." DiStefano, 286 F.3d at 84. "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)(quotation marks omitted). All allegations are construed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Id. (quotation marks omitted).

## III. DISCUSSION

In a federal question case involving a defendant residing outside the forum state, a federal court applies the forum state's personal jurisdiction rules. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). "Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir.1995).

> Connecticut's corporations long arm statute provides, in pertinent part:
>
> (e) Every foreign corporation which transacts business in this state in violation of section 33-920 shall be subject to suit in this state upon any cause of action arising out of such business.
>
> (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state . . . .

-5-

Conn. Gen. Stat. § 33-929.

### A. Jurisdiction under § 33-929(e)

To establish jurisdiction under section 33-929(e), a plaintiff must establish that her causes of action arises out of the business that the foreign corporation conducted in Connecticut. Even assuming, arguendo, that CMI's conduct in representing out-of-state manufacturers in relationships with retailers that do business in Connecticut, or in soliciting the business of a single Connecticut-based manufacturer (i.e., Bausch & Lomb), could be considered "transacting business" in Connecticut– a dubious assumption[4]– it does not appear that Aurand's causes of action arose out of that business. A cause of action arises out of the transaction of business where the litigation "bears some connection with the business conducted by the foreign corporation in this state." Lombard Brothers, Inc. v. General Asset Management Co., 190 Conn. 245, 252 (1983). In determining whether a cause of action arises out of a defendants' transaction of business, a court balances "considerations of public policy, common sense, and the chronology and geography of the relevant factors." Zartolas v. Nisenfeld, 184 Conn. 471, 477 (1981). Here, Aurand's causes of action arise out her employment agreement with CMI, and not out of the contacts that CMI may have had

---

[4] "The term 'transacting business' is not broadly interpreted in Connecticut." Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan, 870 F. Supp. 21, 23 (D. Conn. 1994); see also Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550, 554 (D.Conn. 1968)(noting that, in Connecting, "transacting business" is not interpreted in the broadest sense constitutionally permissible). Conn.Gen.Stat. § 33-920(b) provides that: "[t]he following activities, among others, do not constitute transacting business . . . (11) transacting business in interstate commerce." CMI's conduct in working with manufacturers who do business with retailers with stores in Connecticut would appear to fall within this definition of interstate commerce. See Marvel Products, Inc. v. Fantastics, Inc., 296 F.Supp. 783, 787 (D.Conn. 1968)(finding out-of-state sales by defendant to retailers who sold products in Connecticut was an insufficient basis for jurisdiction under transacting business standard).

with Connecticut through its retailers or clients. Therefore, Conn. Gen. Stat. § 33-929(e) does not provide a jurisdictional basis for Aurand's suit.

B. Jurisdiction under section 33-929(f)(1)

Aurand argues that section 33-929(f)(1) provides a jurisdictional basis for her suit under the Connecticut long-arm statute because, she argues, her employment agreement contemplated her performance in Connecticut, and because her work with CVS/Pharmacy in Rhode Island constituted "actual performance" in Connecticut.

> Whenever a plaintiff has sought to rely on its own performance of the contract in Connecticut to satisfy the long-arm statute, the courts have found jurisdiction only where (1) the contract expressly contemplated or required performance in Connecticut; or (2) the plaintiff had actually performed its obligations in Connecticut and such performance was the most substantial part of the obligations to be performed under the contract.

General Star Indemnity Co. v. Anheuser-Busch Co., 3:97-CV-2542(EBB), 1998 WL 774234, at *4 (D.Conn. Aug. 24, 1998)(citing cases). Jurisdiction was found under the long-arm statute in Federowicz v. Zenith Laboratories, Inc., No. B-90-588(WWE), 1991 WL 218565 (D.Conn. July 15, 1991), where the plaintiff was responsible for large accounts in Connecticut which represented one million dollars in revenue to the defendant. Id. at *1. In Bowman v. Grolsche Bierbrouwerij B.V., 474 F.Supp. 725 (D.Conn. 1979), the district court found that a contract clearly contemplated and required performance in Connecticut by the plaintiff where a written agreement existed that contemplated that the plaintiff would sell the defendant's beer in Connecticut. Id. at 731-32. In Advanced Claims Service v. Franco Enterprises, No. CV000374548S, 2000 WL 1683416 (Conn. Super. Oct. 13, 2000), jurisdiction was found under section 33-929(f)(1) where the parties contracted for the plaintiff to perform investigative services

in Connecticut. Id. at *4.

Aurand argues that these cases support the exercise of jurisdiction over CMI. However, as CMI points out, the contracts in these cases specifically required the plaintiff's performance in Connecticut. The mere fact that Aurand's responsibilities included working with manufacturers outside of Illinois does not imply that her employment agreement clearly contemplated performance in Connecticut. Moreover, Aurand's dealings with out-of-state manufacturers who do business in Connecticut, such as CVS/Pharmacy, does not constitute actual performance by Aurand herself in Connecticut. Additionally, as this court has held in a similar case, the arrangements that were made for Aurand to work for CMI from her home in Connecticut do not confer jurisdiction over CMI under section 33-929(f)(1). See Donner v. knoa Corp., 3:01-CV-2171(JCH), 2002 WL 31060366, at *4 (D.Conn. July 29, 2002)(Hall, J.). Accordingly, Conn. Gen. Stat. § 33-929(f)(1) does not authorize personal jurisdiction over CMI.

## IV. CONCLUSION

For the foregoing reasons, defendant CMI's motion to dismiss for lack of personal jurisdiction [Dkt. 8] is hereby GRANTED. Plaintiff Ronda Aurand's motion for leave to amend complaint [Dkt. No. 19] is hereby GRANTED. The clerk is instructed to close this case.

## SO ORDERED.

Dated at Bridgeport, Connecticut this 20th day of December, 2005.

Janet C. Hall
United States District Judge